# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1213**

**CA 13-00190**

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, VALENTINO, AND WHALEN, JJ.

---

MICHAEL F. FERCHAW AND REBECCA L. FERCHAW,
PLAINTIFFS-RESPONDENTS,

V                                        MEMORANDUM AND ORDER

RUTH A. TROXEL, DEFENDANT-APPELLANT.

---

THOMAS J. RZEPKA, ROCHESTER, AND BURKE, ALBRIGHT, HARTER & REDDY, LLP,
FOR DEFENDANT-APPELLANT.

ROSSETTIE ROSSETTIE & MARTINO LLP, CORNING (GABRIEL V. ROSSETTIE OF
COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

---

Appeal from a judgment (denominated decision and order) of the Supreme Court, Steuben County (Peter C. Bradstreet, A.J.), entered September 14, 2012. The judgment granted the motion of plaintiffs seeking, inter alia, summary judgment declaring valid and enforceable the purchase and sale contract executed by the parties on July 13, 2011 and seeking certain injunctive relief.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.

Memorandum: Plaintiffs commenced this action pursuant to RPAPL article 15, seeking a judgment declaring that the real estate contract executed by the parties is valid and enforceable. The complaint also sought a judgment directing defendant to cooperate with plaintiffs in their efforts to perform the contract and to grant plaintiffs access to the property for the purpose of obtaining an appraisal. Supreme Court granted plaintiffs' motion for summary judgment on both causes of action, issuing the declaration and granting the injunctive relief sought by plaintiffs. We affirm.

In July 2011, shortly after her husband died, defendant approached plaintiff Michael F. Ferchaw and asked whether he would like to purchase her farm, stating that she wanted to sell the property as soon as possible. Defendant had significant debt and a fixed income, and she was concerned that she could not afford to keep the farm. After inspecting the property, plaintiffs agreed to defendant's purchase price of $300,000. Plaintiffs' attorney drafted the purchase and sale contract, which provided, inter alia, that the sale was "contingent upon [plaintiffs] obtaining mortgage financing satisfactory to [them] within six (6) weeks of the acceptance of [their] offer." The purchase price set forth in the contract is

$375,000, with a $75,000 "gift of equity" to plaintiffs at closing, "leaving a balance of $300,000 being payable" to defendant at closing. The contract was not contingent upon approval of the parties' attorneys.

The parties executed the contract on July 13, 2011. The following day, defendant received an offer from another party to purchase the oil, gas and mineral rights on the property for more than $440,000. Although, as noted, the contract did not include a contingency for attorney approval, defendant's attorney advised plaintiffs on July 15, 2011 that he did not approve of the contract and that it was "deemed canceled." Plaintiffs thereafter commenced this action.

Defendant contends that the court erred in granting plaintiffs' motion for summary judgment because plaintiffs offered no evidence that they had the financial wherewithal to purchase the property and thus failed to establish that they were ready, willing, and able to perform under the contract. That contention is raised for the first time on appeal and thus is not properly before us (*see Ciesinski v Town of Aurora*, 202 AD2d 984, 985). In any event, defendant's contention lacks merit. Although a plaintiff seeking specific performance or monetary damages for nonperformance of a contract must demonstrate that he or she was ready, willing and able to perform on the contract (*see Pesa v Yoma Dev. Group, Inc.*, 18 NY3d 527, 531-532; *Madison Invs. v Cohoes Assoc.*, 176 AD2d 1021, 1021-1022, *lv dismissed* 79 NY2d 1040), plaintiffs in this case have not requested specific performance or monetary damages; instead, their complaint seeks declaratory relief and a court directive that defendant must allow plaintiffs on the property for the purpose of obtaining an appraisal. We note that, because defendant refused to allow plaintiffs to enter the property, plaintiffs were unable to obtain an appraisal, which was necessary for them to secure financing. Thus, defendant's anticipatory breach impeded plaintiffs' ability to demonstrate that they were financially capable of purchasing the property.

Defendant further contends that, because the mortgage contingency provision of the contract fails to include essential and material terms of the mortgage to be obtained by plaintiffs, such as the interest rate and term of the mortgage, there is an issue of fact whether the contract is unenforceable under the statute of frauds (*see* General Obligations Law § 5-703 [2]). By failing to plead the statute of frauds as an affirmative defense in her answer, however, defendant waived that defense (*see* CPLR 3018 [b]; *Griffith Energy, Inc. v Evans*, 85 AD3d 1564, 1566). In any event, we conclude that the contract satisfies the statute of frauds inasmuch as it identifies the parties, describes the property to be conveyed, sets forth the purchase price and the closing date, and provides the medium of payment (*see Sabetfard v Djavaheri Realty Corp.*, 18 AD3d 640, 641; *Birnhak v Vaccaro*, 47 AD2d 915, 916). Although there is authority for the proposition that "the terms and conditions of a mortgage subject to which a purchaser is to take title to real property are essential and material elements of [a] contract" for the sale of real property (*Read v Henzel*, 67 AD2d 186, 189; *see Matter of Licata*, 76 AD3d 1076, 1077;

*Wacks v King*, 260 AD2d 985, 987), those cases involve contracts pursuant to which the seller loaned money to the buyer and then held a mortgage on the transferred property.  Here, in contrast, the contract provided for defendant to be paid in full at closing and for plaintiffs to obtain financing from a third-party lender.  Thus, there was no need for the parties' contract to specify the interest rate and the term of the mortgage.

Defendant's further contention that the "gift of equity" provision renders the contract illegal is improperly raised for the first time on appeal, and we therefore do not address it (*see Mee v Strader*, 89 AD3d 1487, 1488; *Matter of City of Yonkers v International Assn. of Firefighters, Local 628*, *AFL-CIO*, 58 AD2d 891, 891, *lv denied* 43 NY2d 643).  We reject defendant's related contention that the "gift of equity" provision was drafted and presented to defendant in a manner calculated to deceive her, and we conclude that defendant's alleged lack of understanding of that provision does not render the contract unenforceable (*see generally Da Silva v Musso*, 53 NY2d 543, 550).  Finally, we conclude that the issue whether a contingency provision for attorney approval should be required in residential real estate contracts, as defendant suggests, involves "a policy decision for the Legislature, not the courts, to make," and we decline to impose such a requirement (*Doe v City of Schenectady*, 84 AD3d 1455, 1459).

Entered:  December 27, 2013                    Frances E. Cafarell
                                               Clerk of the Court